UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 06 B 15945 |
| | ) | |
| DARLENE WILLIAMS, | ) | Chapter 13 |
| | ) | |
| Debtor. | ) | Judge Pamela S. Hollis |

**MEMORANDUM OPINION**

This matter comes before the court on the Objection of AmeriCredit Financial Services, Inc. to Confirmation of Debtor's Proposed Chapter 13 Plan. AmeriCredit asserts that because the plan does not provide for payment of its debt as determined under nonbankruptcy law, the plan cannot be confirmed. For the reasons stated below, the court sustains the objection.

**BACKGROUND**

The parties are in agreement as to the basic facts of this case. On August 19, 2003, Darlene Williams filed case number 03 B 34306 under Chapter 13 of the Bankruptcy Code. Although she confirmed a plan of reorganization on January 15, 2004, and made payments for over a year, her case was converted to Chapter 7 on March 9, 2005 and she received a Chapter 7 discharge on July 6, 2005.

On July 12, 2005, Williams purchased a 2005 Ford Focus and entered into a Retail Installment Contract with AmeriCredit. According to the Contract, Williams was required to make equal monthly payments to AmeriCredit in the amount of $460.33, at an interest rate of 19.75%.

Williams filed a new Chapter 13 case on December 4, 2006. Her modified Chapter 13 plan, dated February 12, 2007, provides at paragraph (E)(3)(a) that AmeriCredit has a secured

claim of $16,882.57, and proposes to pay that claim at a rate of $360.78 per month. The interest rate that AmeriCredit will receive under the proposed plan is 10.25%.

AmeriCredit agrees that its secured claim is $16,882.57.[1] It argues, however, that it is entitled to receive payment pursuant to the terms of the Contract, which includes an interest rate of 19.75%. Since the plan does not provide for such payment, AmeriCredit asks that its objection be sustained and that confirmation of the plan be denied.

## LEGAL DISCUSSION

Section 1325(a)(5) provides three options for treating allowed secured claims under a plan. The holder of the claim may accept the plan, see § 1325(a)(5)(A), or the debtor may surrender the collateral, see § 1325(a)(5)(C). The third option, however, contemplates that the debtor will retain the property over the creditor's objection:

(a) the court shall confirm a plan if –

> (5) with respect to each allowed secured claim provided for by the plan – . . .
>
> > (B)(i) the plan provides that –
> >
> > > (I) the holder of such claim retain the lien securing such claim until the earlier of –

---

[1] Pursuant to the operation of 11 U.S.C. § 506, a secured creditor's claim is generally bifurcated into a secured portion and an unsecured portion, based on the value of the collateral securing the debt.
Under BAPCPA, however, "claims pertaining to vehicles purchased within 910 days before filing of the bankruptcy case may no longer be stripped down – such claims must be treated as fully secured." DaimlerChrysler Services North America LLC v. Taranto, ___ B.R. ___, 2007 WL 935709, *4 (B.A.P. 6th Cir. March 30, 2007). Williams purchased her car within 910 days of filing her bankruptcy petition, therefore AmeriCredit's claim may not be bifurcated. The parties agree that Americredit holds an allowed claim in the amount of $16,882.57.

       (aa) the payment of the underlying debt determined under nonbankruptcy law; or

       (bb) discharge under section 1328; and

    (II) if the case under this chapter is dismissed or converted without completion of the plan, such lien shall also be retained by such holder to the extent recognized by applicable nonbankruptcy law; and

  (ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; and

  (iii) if –

    (I) property to be distributed pursuant to this subsection is in the form of periodic payments, such payments shall be in equal monthly amount; and

    (II) the holder of the claim is secured by personal property, the amount of such payments shall not be less than an amount sufficient to provide to the holder of such claim adequate protection during the period of the plan.

In summary, if the plan contemplates that a debtor will retain collateral over the secured creditor's objection, the plan must provide that: (1) the secured creditor retains its lien until discharge or until it is paid under nonbankruptcy law; (2) the secured creditor receives the present value of the allowed amount of its claim; and (3) payments are made in equal monthly installments that provide the secured creditor with adequate protection.

This objection to confirmation focuses on the first requirement, the retention of the secured creditor's lien until the occurrence of a certain event. The parties agree that even if she completes all payments under this plan, Williams is not entitled to a discharge because she

received a Chapter 7 discharge on July 6, 2005.[2] Therefore, the plan must provide that AmeriCredit will retain its lien until "payment of the underlying debt determined under nonbankruptcy law." See § 1325(a)(5)(B)(i)(I)(aa).

The issue presented to the court in AmeriCredit's objection is, what does "payment of the underlying debt determined under nonbankruptcy law" mean?

Williams argues that by paying AmeriCredit interest at a rate of prime plus a certain risk factor, she is paying the debt as determined under nonbankruptcy law. And in fact, the plan contemplates an interest rate of 10.25%, which is prime (8.25%) plus two percent (2%). AmeriCredit disagrees, asserting that it is entitled to interest at the 19.75% rate provided in the Contract.

In support of her argument, Williams notes that pursuant to 11 U.S.C. § 1322(b)(2), a debtor may "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims." Her ability to "modify the number, timing, or amount of the installment payments from those set forth in the debtor's original contract is perfectly clear." Till v. SCS Credit Corp., 541 U.S. 465, 474 (2004).

Till adopted a "prime plus risk" calculation for determining the appropriate interest rate that a debtor must use in order "to ensure that the property to be distributed to a particular secured creditor over the life of a bankruptcy plan has a total 'value, as of the effective date of the plan,' that equals or exceeds the value of the creditor's allowed secured claim. . .". Till, 541

---

[2] In re Williams, Case No. 06 B 15945, Order Determining Eligibility for Discharge, Docket No. 33 (Bankr. N.D. Ill. March 19, 2007).

U.S. at 474 (quoting § 1325(a)(5)(B)(ii)). Williams asserts that in adopting this calculation, "the Supreme Court expressly rejected the use of the original contract rate of interest as appropriate." Response at 10.

This court finds that Williams is stretching Till to fit a statute that it was not written to cover. Till determined the appropriate interest rate necessary to satisfy the present value requirement of § 1325(a)(5)(B)(ii). Pursuant to that subsection, a debtor who wishes to retain collateral in which a creditor holds a security interest and to cram down its plan over that creditor's objection must pay the creditor "the value, as of the effective date of the plan, of . . . not less than the allowed amount of such claim."

In 2005, Congress added a new and different requirement to § 1325(a)(5)(B), in addition to the requirement that an objecting creditor receive the present value of the allowed amount of its claim. Now a Chapter 13 plan must also provide that the objecting secured creditor retain its lien either until the debtor receives a discharge under § 1328 or until "the payment of the underlying debt determined under nonbankruptcy law." § 1325(a)(5)(B)(i)(I).

Williams urges the court to give the words of the new statute their "plain meaning," and asserts that "[n]othing in the plain language of the significantly amended section 1325(a) overrules Till." Response at 11. The court agrees that Till has not been overruled. In order to satisfy § 1325(a)(5)(B)(ii), a debtor must still pay an objecting secured creditor interest at a rate of prime plus a risk factor.

But Congress chose completely different words to frame the requirement of how much a debtor must pay the holder of an allowed secured claim before its lien is released if that debtor is not going to receive a discharge. If Congress meant § 1325(a)(5)(B)(i)(I)(aa) to be interpreted as

having the same meaning as § 1325(a)(5)(B)(ii), why wouldn't it simply have written that a plan must provide that the holder of an allowed secured claim retain its lien either until discharge or until it receives "the value, as of the effective date of the plan, of . . . the allowed amount of such claim?" Till was decided 11 months prior to BAPCPA's enactment, so Congress knew how the phrase would be interpreted by the courts. Congress did not use the same language in § 1325(a)(5)(B)(i)(I)(aa) as in § 1325(a)(5)(B)(ii), and the court must therefore find that Congress meant something different.

Moreover, in most cases, a Chapter 13 debtor will receive a discharge when he completes his plan payments. 11 U.S.C. § 1328(f), added to the Code in 2005 by BAPCPA, denies debtors a chapter 13 discharge if they obtained a Chapter 7 discharge within four years of the filing of the current case or a Chapter 13 discharge within two years of the filing of the current case. Subsection 1325(a)(5)(B)(i)(I)(aa) is limited to those narrow situations described in § 1328(f), where the debtor is not entitled to a discharge. Congress determined that in those particular scenarios where the debtor has recently obtained a discharge, the secured creditor may retain the lien securing its claim until it receives the "payment of the underlying debt determined under nonbankruptcy law."

In this case, had Williams not filed for protection under the Bankruptcy Code, applicable nonbankruptcy law bound her to the terms of the Contract with AmeriCredit. Consequently, in order to pay AmeriCredit as determined under nonbankruptcy law, Williams must make the payments required by the Contract. The Contract calls for an interest rate of 19.75%, so AmeriCredit is entitled to retain its lien until it receives full payment at 19.75%. See also In re Fleming, 339 B.R. 716, 723 (Bankr. E.D. Mo. 2006) ("If . . . the debtor fails to complete

payments under the Chapter 13 plan, the debtor will not receive a discharge. In this scenario, the lien remains and the Car Creditor is entitled to collect the amount of its claim as determined under non-bankruptcy law – including interest at the contract rate – under 1325(a)(5)(B)(i)(I)(aa).").

For the reasons stated above, AmeriCredit's objection to confirmation is sustained and confirmation of Williams's plan is denied.

Date: APR 23 2007

PAMELA S. HOLLIS
United States Bankruptcy Judge